EMMA POPPER, Plaintiff, *v.* THE AMERIKAI MAGYAR NEPSZAVA, INC., and IZSO SZEKELY, Defendants.

Supreme Court, Special Term, New York County, May 3, 1937.

118

*Mitchell Salem Fisher*, for the plaintiff.

*Blum & Jolles* [*Joseph G. Blum* and *George Foster, Jr.*, of counsel], for the defendants.

SHIENTAG, J.   This is a motion to strike out a defense of justification, interposed as a complete defense, in a suit for libel.   The alleged libel appeared in a Hungarian newspaper, the *Amerikai Magyar Nepszava*, published in this country.   It concerned " The Tragedy of a Rustic Girl who Hunted for Worldly Pleasures. The Career of a Beautiful Brettyoujfalu [name of a town in Hungary] Girl is Ended in Moscow."

The story is that of the beautiful Emma Popper, the daughter of a wealthy country merchant.   Dissatisfied with the life about her, she yearned for the more glamorous activity of the city. " This," said the article, " is a Madame Bovary history of a girl of whom Flaubert wrote: ' Woe to the gleaner who lifts her eyes up, for on the highways the carriages of barons and lords run by, and beholding these she will not be able to set down to work again.' "

Suddenly the beautiful Emma, perhaps still dreaming of princes and lords, disappeared from the little village of Brettyoujfalu. Her frantic parents searched the countryside in vain.   She had gone.   As last a letter, bearing a Viennese postmark, arrived.   In it Emma wrote that her dreams had come true, that she had become a successful Viennese actress.   Others followed which told of her growing popularity and of the high social circles in which she moved. Then, abruptly, silence.   Everyone in Brettyoujfalu was convinced that Emma was dead.   Conflicting reports of the manner of her death filtered through from the outside world.   Some maintained that she had committed suicide in Moscow; others that she had been arrested by the G. P. U. (Russian secret police) and executed in a Tekaterinoslav.   The entire district, alive with the memory of the beautiful girl, was concerned with the tragedy of her death.   This, in substance, is the article complained of.

Emma Popper is very much alive, however. She brings this suit for libel, to which defendant pleads justification, among other defenses. The pleaded justification alleges that Emma went to Vienna where she became an actress, that she thereafter traveled in Europe and particularly in Russia, that a mystery as to her whereabouts developed, and that she was reported dead in the manner set forth in the article. This, the plaintiff maintains, can only be a partial defense, since the article also imputes meretricious relationships to her.

It is the rule that if the meaning for which the defendant contends can permissibly be accepted by the jury, the defenses as matter of pleading are as broad as the publication of which the plaintiff complains, and will not be stricken out. (*Foley* v. *Press Publishing Co.*, 226 App. Div. 535, 541; *Finkle* v. *Westchester Newspapers, Inc.*, 235 id. 817.)

Gustave Flaubert's "Madame Bovary" concerns a young woman married to a mediocre country physician. Wearied of her prosaic life, she takes unto herself several lovers, by whom she is successively abandoned. Weighed down by duplicity and debt, she at last reaches a tragic end. We are not here concerned with the philosophy of life that Madame Bovary illustrates, nor whether she is to be pitied as an example of human frailty or condemned as an immoral adultress. Our sole interest is in the facts of her life. To say of any woman that her life is " a Madame Bovary history " is to impute at least her participation in meretricious relationships. A jury could reasonably reach but one conclusion on this issue. The alleged complete defense makes no answer to this imputation. It, therefore, can be considered only as a partial defense, and in mitigation of damages, and the motion must be granted. Defendants may amend the answer within ten days.